**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0487-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

AMBOY NATIONAL BANK
ACCOUNT NUMBER XXX-XXXX-2
VALUED AT FOUR HUNDRED
THIRTY-SIX THOUSAND EIGHT
HUNDRED FORTY-FIVE DOLLARS
AND EIGHTY-SIX CENTS IN
UNITED STATES CURRENCY,
AMBOY NATIONAL BANK
ACCOUNT NUMBER XXX-XXXX-4
VALUED AT THREE HUNDRED
EIGHTY-TWO THOUSAND THREE
HUNDRED NINETY-EIGHT
DOLLARS AND FOURTEEN CENTS
IN UNITED STATES CURRENCY,
AMBOY NATIONAL BANK
ACCOUNT XXX-XXXX-5 VALUED AT
SEVENTEEN THOUSAND NINE
HUNDRED FIFTY DOLLARS AND
FOURTEEN CENTS IN UNITED
STATES CURRENCY, and EIGHT
THOUSAND EIGHT HUNDRED
FORTY-FIVE DOLLARS IN
UNITED STATES CURRENCY,

Defendants.

_____

Argued April 9, 2019 – Decided May 29, 2019

Before Judges Yannotti and Gilson.

On appeal from Superior Court of New Jersey, Law
Division, Monmouth County, Docket No. L-5279-10.

Ralph Peter Ferrara argued the cause for appellants
John R. Bovery, Jr. and Mary Bovery (Ferrara Law
Group, PC, attorneys; Ralph Peter Ferrara and Kevin
James Kotch, of counsel and on the briefs).

Carey J. Huff, Assistant Prosecutor, argued the cause
for respondent (Christopher J. Gramiccioni, Monmouth
County Prosecutor, attorney; Carey J. Huff, of counsel
and on the brief).

PER CURIAM

This is the second appeal in this civil forfeiture action. In 2010, the State

seized just over $846,000 from the bank accounts and residence of the claimants

John R. Bovery, Jr. (Bovery) and his wife Mary Bovery (collectively,

claimants). The State then filed a civil forfeiture action, contending that

claimants obtained the seized funds from illegal sports pools. In 2014, the trial

court granted summary judgment to the State finding that the seizure was valid

and the claimants had failed to show that any of the funds came from legal

sources. We affirmed that final summary judgment order. State v. Amboy Nat'l

<u>Bank Account No. XXX-XXXX-2</u>, 447 N.J. Super. 142 (App. Div. 2016). The Supreme Court denied claimants' petition for certification. <u>State v. Amboy Nat'l Bank Account No. XXX-XXXX-2</u>, 228 N.J. 249 (2016).

In 2017, claimants moved to open and vacate the final summary judgment order, contending that the State had admitted that just over $26,000 of the seized funds had come from legal sources. Initially, the trial court granted that motion because it was not opposed. Thereafter, the State moved for reconsideration. In an order entered on June 23, 2017, the trial court granted the State's motion for reconsideration and denied claimant's motion to open and vacate the final summary judgment order. Claimants now appeal from the June 23, 2017 order and a September 14, 2017 order denying their motion for reconsideration. We affirm. The trial court properly granted the State's motion for reconsideration. The court also correctly ruled that claimants had not established a basis to open and vacate the prior final summary judgment order.

I.

We have previously detailed the facts giving rise to this forfeiture action and the related criminal charges against Bovery. See <u>Amboy Nat'l Bank Account No. XXX-XXXX-2</u>, 447 N.J. Super. at 148-54. Accordingly, we will only summarize some of the more relevant facts and procedural history.

For approximately twenty years, Bovery organized sports pools. There were thousands of participants in the pools who paid entry fees ranging from $20 to $100. During the 2009 to 2010 "pool cycle," Bovery collected just over $1.7 million in pool entry fees. The winners of the pools would then usually pay a "gift" of approximately ten percent of the winnings to Bovery for operating the pool. Bovery did not report the "gifts" he received as income to federal or state taxing authorities.

Bovery deposited the entry fees from the pools into bank accounts he controlled. In 2010, law enforcement officers became aware of Bovery's operations, and they interviewed him. Thereafter, law enforcement officers obtained warrants to seize three bank accounts held by claimants at Amboy National Bank and to search their residence. When the warrants were executed in September 2010, $846,039.14 was seized. Specifically, $436,845.86 was seized from one bank account, $382,398.14 was seized from another account, $17,950.14 was seized from a third account, and $8845 was seized from Bovery's home and person. Of the monies seized, it was undisputed that $722,000 came from players' entry fees and the remainder of approximately $124,000 was alleged to be claimants' personal funds. The State maintained that those personal funds were derived from illegal gifts for operating the sports

 A-0487-17T3

pools. In contrast, Bovery contended that the $124,000 contained some money that had been derived from legal sources.

After seizing the funds, the State instituted this forfeiture action. The parties then engaged in and completed discovery. Thereafter, the State and claimants filed motions for summary judgment. On June 10, 2014, the trial court entered summary judgment in favor of the State and denied claimants' motion for summary judgment. Claimants moved for reconsideration, but the trial court denied that motion. Claimants then filed their first appeal.

As previously noted, in August 2016, we affirmed the grant of summary judgment to the State. We held that the sports pools operated by Bovery were illegal forms of gambling and that the State had demonstrated "a direct causal connection between the seized funds and an indictable offense." Amboy Nat'l Bank Account No. XXX-XXXX-2, 447 N.J. Super. at 162. In evaluating whether the seizure of the entire $846,039.14 was appropriate, we concluded that "claimants failed to present a genuine issue of fact that an identifiable amount of the money seized was attributable to a legitimate source." Id. at 164. In that regard, we noted that it was "claimants' burden to present 'sufficient credible evidence to allocate the funds between illegal and legal purposes'" and

5

we determined that the claimants had not met that burden. Id. at 165 (quoting State v. Seven Thousand Dollars, 136 N.J. 223, 238 (1994)).

While the forfeiture action was proceeding, related criminal charges were brought against Bovery. In February 2011, a grand jury indicted Bovery for first-degree money laundering, N.J.S.A. 2C:21-25, and third-degree promotion of gambling, N.J.S.A. 2C:37-2. Following plea negotiations, in April 2016, Bovery pled guilty to an amended charge of third-degree possession of gambling records, N.J.S.A. 2C:37-3. In pleading guilty, Bovery requested, and the court granted, a civil reservation that prevented his criminal admission from being used as evidence in any civil proceeding, including the forfeiture action.

In accordance with his plea agreement, Bovery was admitted into the Pretrial Intervention Program (PTI) for six months. Bovery completed PTI and, on November 16, 2016, the criminal charge against him was dismissed.

On April 7, 2017, claimants filed a motion to vacate the final order granting summary judgment to the State in the civil forfeiture action. On April 28, 2017, the trial court granted claimants' motion because there was no opposition from the State. Accordingly, the court entered an order vacating the June 10, 2014 order that granted summary judgment in favor of the State. The trial court also reopened the forfeiture matter. In issuing the order dated April

28, 2017, the trial court did not give an oral or written statement of reasons explaining its decision to vacate the summary judgment order and to reopen the matter.

On May 17, 2017, the State filed a motion seeking reconsideration of the April 28, 2017 order. In support of that motion, the State filed three certifications and two affidavits from members of the Monmouth County Prosecutor's Office, who represented that the State had not received the claimants' motion seeking to vacate the final order and reopen the forfeiture action.

On June 23, 2017, the trial court heard oral argument on the State's motion for reconsideration. The court granted that motion and also heard argument on claimants' motion to vacate the final order in the forfeiture matter. That same day, the trial court issued a written statement of reasons and order memorializing its decision to grant the State's motion for reconsideration and denying claimants' motion to vacate the prior final order. Accordingly, the June 23, 2017 order vacated the trial court's order of April 28, 2017, and denied claimant's motion to vacate the June 10, 2014 order that had granted summary judgment to the State.

A-0487-17T3

Claimants moved for reconsideration. The trial court, however, denied that motion in an order entered on September 14, 2017. The trial court also issued a written statement of reasons in support of its September 14, 2017 order.

## II.

Claimants appeal from the orders entered on June 23, 2017 and September 14, 2017. On this second appeal, claimants make two primary arguments. First, they contend that the State was properly served with their motion to vacate and, therefore, there was no basis to grant reconsideration. Second, claimants argue that the trial court erred in refusing to vacate the summary judgment order entered on June 10, 2014. We are not persuaded by either of these arguments.

### A. The State's Motion for Reconsideration

We will not disturb an order concerning a motion for reconsideration absent an abuse of discretion. Brunt v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 357, 362 (App. Div. 2018). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Ibid. (quoting Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015)).

A party may move for reconsideration of an order in accordance with <u>Rule</u> 4:49-2 when (1) the court's decision was based on "a palpably incorrect or irrational basis," or (2) the court failed to consider or "appreciate the significance of probative, competent evidence[.]" <u>Cummings v. Bahr</u>, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting <u>D'Atria v. D'Atria</u>, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). "Alternatively, if a litigant wishes to bring new or additional information to the [c]ourt's attention which it could not have provided on the first application, the [c]ourt should, in the interest of justice (and in the exercise of sound discretion), consider the evidence." <u>Ibid.</u> (quoting <u>D'Atria</u>, 242 N.J. Super. at 401).

Here, the trial court's decision to grant the motion for reconsideration to the State was not an abuse of discretion for two reasons. First, the State established that it did not receive notice of claimants' motion to vacate. There is "a presumption that mail properly addressed, stamped, and posted was received by the party to whom it was addressed." <u>SSI Med. Servs., Inc. v. Dep't of Human Servs.</u>, 146 N.J. 614, 621 (1996). The trial court here did not abuse its discretion in finding that the State had rebutted the presumption of receipt. In that regard, the State submitted affidavits and certifications from five employees of the Monmouth County Prosecutor's Office, all of whom swore or

certified that they did not receive a copy of claimants' motion to vacate. Thus, the trial court properly exercised its discretion to reconsider an order that it had entered merely because there was no opposition.

Second, in entering its order dated April 28, 2017, the trial court did not provide any reasons for granting the motion. Rule 1:7-4 states that the court "shall" make written or oral findings of facts and state its conclusions of law on every motion decided by a written order that is appealable as of right, and also as required by Rule 3:29. Even when a substantive motion is unopposed, factual findings and conclusions of law are required. See Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 300-01 (App. Div. 2009) (explaining that trial courts are not relieved from the obligation to make findings of fact and conclusions of law when a substantive motion is unopposed). Without a statement of reasons, there is no way for the parties or us to know what the basis of the trial court's decision was in vacating the final order. Accordingly, the trial court did not abuse its discretion in granting reconsideration of an order that was not supported by findings of fact or conclusions of law.

B.    Claimants' Motion to Vacate the 2014 Final Order Granting Summary Judgment to the State

Claimants contend that they are entitled to vacate the final summary judgment order entered on June 10, 2014. In that regard, they rely on Rule 4:50-

1(f), asserting that the State admitted that at least some portion of the seized money was not associated with the illegal sports pools.

Appellate courts grant "substantial deference" to a determination to vacate a judgment under Rule 4:50-1 and will not reverse the trial court's decision "unless it results in a clear abuse of discretion." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). As previously noted, a decision constitutes an abuse of discretion when it is "made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis." Id. at 467-68 (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

Here, claimants argue that they are entitled to relief from the June 10, 2014 final summary judgment order under subsection (f) of Rule 4:50-1. Subsection (f) provides that a party is entitled to relief for "any other reason justifying relief from the operation of the judgment or order." R. 4:50-1(f). Such relief, however, "is available only when 'truly exceptional circumstances are present.'" Guillaume, 209 N.J. at 484 (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 286 (1994)). "In such 'exceptional circumstances,' Rule 4:50-1(f) is 'as expansive as the need to achieve equity and justice.'" Ibid. (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)). "In determining

whether relief is warranted under this section of the rule, courts focus on equitable considerations." Nowosleska v. Steele, 400 N.J. Super. 297, 303 (App. Div. 2008) (citing Little, 135 N.J. at 294). "Generally, relief under subsection (f) is applied 'sparingly, in exceptional situations' to prevent grave injustice." Id. at 304 (quoting Cmty. Realty Mgmt., Inc. v. Harris, 155 N.J. 212, 237 (1998)).

Here, claimants contend there are exceptional circumstances because the State allegedly admitted that some of the seized funds came from legal sources. The new evidence they cite for that contention is a certification from their counsel. In claimants' counsel's certification, he contends that during plea and settlement negotiations, which occurred in March 2016, the then-Acting Monmouth County Prosecutor and several assistant prosecutors "admitted that at least $26,795 of the [seized] money at issue was in no way associated with the alleged illegal pools[.]"

The trial court correctly ruled that claimants' counsel's hearsay statements concerning what members of the prosecutor's office stated during settlement and plea negotiations were inadmissible. "[S]tatements made by parties during settlement negotiations are generally inadmissible in subsequent proceedings,

N.J.R.E. 408, as are most statements made during criminal plea negotiations, N.J.R.E. 410." State v. Williams, 184 N.J. 432, 449 (2005).

Here, claimants contend that the statements by members of the prosecutor's office demonstrate that the State "obstructed justice and acted in bad faith." That contention is not supported by the record for two reasons. First, claimants are seeking to admit hearsay statements made during settlement and plea negotiations. Such statements are inadmissible. See N.J.R.E. 408 (providing that "evidence of statements or conduct by parties or their attorneys in settlement negotiations, . . . including offers of compromise or any payment in settlement of a related claim, shall not be admissible to prove liability for, or invalidity of, or amount of the disputed claim"); N.J.R.E. 410 (providing similar protections as Rule 408 to criminal defendants and the State in the context of plea negotiations); Williams, 184 N.J. at 447-49; Kas Oriental Rugs, Inc. v. Ellman, 394 N.J. Super. 278, 283, 288 (App. Div. 2007).

Second, the assertions in claimants' counsel's certification are rebutted by the record. In an exchange of emails in March 2016, the State made clear that it was not admitting that some of the seized funds were derived from legal sources; rather, it was open, as part of settlement discussions, to consider

claimants' position that a relatively small portion of the seized funds may have come from legal sources.

In short, having reviewed the entire record, and having considered the contentions of the parties, we conclude that the trial court properly exercised its discretion in granting reconsideration to the State and in denying claimants' motion to vacate and open the previously-entered final order.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0487-17T3