**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3234-19T4

ERIC L. MASON,

     Plaintiff-Respondent,

v.

CITY OF ATLANTIC CITY
and PAUL JERKINS,

     Defendants-Appellants.

_____

Argued telephonically July 15, 2020 –
Decided July 30, 2020

Before Judges Hoffman and Currier.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1956-17.

Frank Guaracini, III argued the cause for appellants (Blaney & Karavan, PC, attorneys; Frank Guaracini, III, of counsel and on the briefs).

David Rock Castellani argued the cause for respondent (Castellani Law Firm, LLC, attorneys; David Rock Castellani, on the brief).

PER CURIAM

On leave granted, we consider whether a memorandum written by defendant Paul Jerkins, Director of Public Works, to City Solicitor, Anthony Swan, was a privileged document not subject to disclosure. Although the trial court initially issued a protective order regarding the Jerkins memorandum, the court subsequently granted plaintiff's motion for reconsideration. Because we determine the Jerkins memorandum was protected from disclosure under the attorney-client privilege established under N.J.R.E. 504 and N.J.S.A. 2A:84A-20, we reverse.

Plaintiff was hired by the Atlantic City Department of Public Works as a boiler room operator in 1998. As part of a lay-off plan approved by the Civil Service Commission, the City of Atlantic City (City) eliminated 200 positions in June 2015. Plaintiff and other boiler room operators were laid off under the plan.

In October 2015, the City re-hired several boiler operators, including plaintiff, to temporary positions due to a need for operators during the winter months. Plaintiff was again laid off from this position in April 2016.

On September 19, 2016, plaintiff sent a letter to Jerkins, the Mayor of the City, the Business Administrator, the Solicitor's Office, and numerous council

persons. In the letter, he alleged Jerkins had engaged in illegal conduct, including: wage and hour violations; violations of the Occupational Safety and Health Administration Act, 29 U.S.C. §§ 651 to 678, and other workplace safety violations; union retaliation; fiscal mismanagement; and other issues related to public policy and abuses of public office.

On September 22, 2016, Jerkins sent a memorandum to City Solicitor Swan, requesting legal advice on an issue pertaining to plaintiff. Because we deem the Jerkins memorandum privileged, we do not disclose its contents in this opinion. We only note that Jerkins sought "written advice" from Swan pertaining to any pertinent "statutes" or "law" relevant to the specific issue with plaintiff.

Plaintiff was not re-hired in October 2016. The following year, he filed a complaint against defendants, alleging claims for a violation of the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14; age discrimination under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49; and retaliation for exercising his right to free speech in his September 2016 letter under the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2.

During the course of discovery, defendants "inadvertently" produced the Jerkins memorandum. Thereafter, defendants requested plaintiff return the document and delete any electronic copies. In the written request, defendants asserted the document was protected by the attorney-client privilege as it "clearly . . . seek[s] a legal opinion from the City Solicitor" and defendants had not waived any privilege related to the document.

Plaintiff's counsel refused to return the Jerkins memorandum, contending it was not privileged as it did not seek the advice of counsel. Defendants sent a second request seeking the return of the Jerkins memorandum. Defendants argued the document was privileged because "[w]ithout question, th[e] document is a communication from an employee of the City to the City's attorney seeking a legal opinion." Defendants reasserted they had not waived any privilege related to the document. Plaintiff again refused to return the memorandum.

Some months later, plaintiff served a notice in lieu of subpoena for the deposition testimony of Swan. In response, defendants filed a motion for a protective order – seeking the return of the Jerkins memorandum and an order protecting the document from discovery under the attorney-client privilege – and to quash the notice in lieu of subpoena for Swan's deposition testimony.

A-3234-19T4

After oral argument, the trial court issued a written decision and order on December 9, 2019, granting defendants' application. The court found the Jerkins memorandum was protected by the attorney-client privilege, stating "Jerkins specifically seeks legal advice from Solicitor Swan. . . . Jerkins did not address the memorandum to any other individual. As such, [defendants] ha[ve] illustrated good cause for a protective order." Plaintiff was ordered to return the document to defendants' counsel within ten days.[1]

Plaintiff filed a motion for reconsideration of the December 9, 2019 order granting a protective order. Plaintiff contended the court had not considered his argument that defendants waived any assertion of privilege under the "advice of counsel" theory, and the court did not consider whether the memorandum was privileged under In re Kozlov.[2]

On January 31, 2020, the motion was denied. In an oral decision, the court reiterated the determination "that the entire document, which was inadvertently disclosed to the plaintiff, was protected by attorney[-]client privilege because

---

[1] The court denied the motion to quash the deposition of Swan. However, plaintiff was instructed he could not "elicit any information that pertains to legal advice given by Anthony Swan . . . to defendant Je[r]kins or any other Atlantic City employee."

[2] In re Kozlov, 79 N.J. 232 (1979).

[Jerkins] was specifically seeking legal advice." The court found the memorandum was protected from disclosure under N.J.R.E. 504 and N.J.S.A. 2A:84A-20. Moreover, the court noted plaintiff had not presented any new arguments that required reconsideration.

On February 3, 2020, plaintiff's counsel wrote to the trial court advising he had requested oral argument on the reconsideration motion, which should have been granted under Rule 1:6-2(d). Thereafter, the trial court heard oral argument on the reconsideration motion. During the argument, plaintiff informed the court that defendants' counsel had advised him they were not relying upon an advice of counsel defense.[3]

On February 20, 2020, the trial court issued a written opinion and order vacating the December 9, 2019 order and granting plaintiff's motion for reconsideration. The judge noted she had not considered or applied the Kozlov test during her earlier determination regarding the Jerkins memorandum. After analyzing the Kozlov test, the court found the attorney-client privilege was pierced and, therefore, the memorandum was discoverable.

---

[3] Defendants' counsel had previously advised the court it was not asserting this defense during the oral argument in December 2019 on the initial motion.

We granted defendants' motion for leave to appeal. Defendants assert the Jerkins memorandum was protected from disclosure under the attorney-client privilege because Jerkins was seeking legal advice from Swan, the City Solicitor. They further contend the memorandum was inadvertently produced and there was no waiver of the privilege. Defendants argue the trial court erred in its finding that Kozlov compelled a piercing of the privilege.

We review an order for a motion for reconsideration for an abuse of discretion. Brunt v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 357, 362 (App. Div. 2018). Defendants contend the Jerkins memorandum was protected from disclosure during discovery under the attorney-client privilege. Whether the attorney-client privilege applies is a legal issue, which we review de novo. Paff v. Div. of Law, 412 N.J. Super. 140, 149 (App. Div. 2010).

The privilege safeguards the communications between lawyers and clients "in the course of that relationship and in professional confidence . . . ." N.J.S.A. 2A:84A-20(1); N.J.R.E. 504(1). It applies to communications "(1) in which legal advice is sought, (2) from an attorney acting in his [or her] capacity as a legal advisor, (3) and [where] the communication is made in confidence, (4) by the client." Hedden v. Kean Univ., 434 N.J. Super. 1, 10 (App. Div. 2013).

As the holder of the privilege, the client can refuse to disclose a communication and prevent disclosure by his or her lawyer. N.J.S.A. 2A:84A-20(1); N.J.R.E. 504. The privilege may be claimed by the client or the lawyer unless otherwise instructed by the client or his or her representative. Ibid.

Our Supreme Court has held that the privilege may be pierced under limited circumstances. In Kozlov, the Court established a three-part test which a party must satisfy to pierce the privilege: (1) there must be "a legitimate need . . . to reach the evidence sought to be shielded"; (2) the evidence must be relevant and material to an issue in the case; and (3) there must be a finding, "by a fair preponderance of the evidence," that the information sought cannot be obtained from a "less intrusive source." 79 N.J. at 243-44 (emphasis in original) (quoting In re Farber, 78 N.J. 259, 276-77 (1978)).

In State v. Mauti, the Court held that the third prong of the Kozlov test must be construed narrowly:

> Kozlov did not propound a broad equitable balancing test pursuant to which any privilege is subject to piercing if the adversary "needs" relevant evidence that cannot be obtained from another source. Such an approach would eviscerate the privileges and trench on the legislative judgments informing them. To the contrary, in Kozlov, . . . we recognized that only in the most narrow of circumstances, such as where a privilege is in conflict with a defendant's right to a

> constitutionally guaranteed fair trial, would the need
> prong of its test be satisfied.
>
> [208 N.J. 519, 537-38 (2012).]

The Mauti Court also recognized that "any party is free to waive a privilege . . . ." Id. at 532. A privilege may be waived explicitly or implicitly. To summarize, the third Kozlov prong can be satisfied: "(1) where a constitutional right is at stake, or (2) a party has explicitly or implicitly waived the privilege." Id. at 538-39.

Applying these principles, we turn to an analysis of the Jerkins memorandum. Plaintiff disputes the Jerkins memorandum is a privileged document. He argues that Jerkins only requests legal counsel in a portion of the memorandum and therefore the remainder of the document should be discoverable. In addition, he contends defendants waived the privilege, and the court correctly found the privilege was pierced under the Kozlov test.

We are satisfied the memorandum is a privileged document. It was sent by Jerkins in his capacity as the City's Director of Public Works to Swan, the City Solicitor. Jerkins did not send the memorandum to any other individual. In the document, Jerkins clearly requested legal advice from Swan. He requested counsel on pertinent statutes or laws, and specifically asked for written advice on a particular issue regarding plaintiff. Because the document

is a communication between an attorney and his client, the entire memorandum was subject to the attorney-client privilege. See N.J.S.A. 2A:84A-20(1); N.J.R.E. 504(1).

We must consider then whether defendants waived the privilege or plaintiff successfully pierced the privilege to compel disclosure of the memorandum. We quickly dispose of the waiver argument.

On appeal, for the first time, plaintiff argues defendants waived the privilege when defense counsel marked the Jerkins memorandum during the deposition of plaintiff and asked whether plaintiff had ever seen the document. This argument was not presented to the trial court and the documents were not included in the record on appeal. Plaintiff does not present any other arguments supporting its claim of waiver.

We are satisfied defendants did not explicitly or implicitly waive the privileged memorandum. They promptly informed plaintiff's counsel that the disclosure of the document was inadvertent, requested the return of the memorandum due to its privileged nature, and informed counsel there was no explicit or implicit waiver. When plaintiff refused to return the memorandum, defendants sought a protective order. The inadvertent disclosure of a privileged document during discovery by counsel does not constitute a waiver by the client

10

of the attorney-client privilege here because the client did not voluntarily and knowingly disclose the document. See Trilogy Commc'ns, Inc., v. Excom Realty, Inc., 279 N.J. Super. 442, 445, 448 (Law Div. 1994).

We are also unconvinced that plaintiff met the requirements under Kozlov to warrant a piercing of the privilege. Although the memorandum may be relevant and material to the issues in the case, plaintiff has not established the remaining elements of the Kozlov test.

The trial court found plaintiff had demonstrated a legitimate need for the memorandum because it "may provide some proof of Jerkins' intent to discriminate against plaintiff." This vague and speculative statement does not meet the high threshold required under Mauti to pierce the privilege. Plaintiff asserts his claims of CEPA and CRA violations are "of constitutional dimension" and suffice to satisfy the "legitimate need" prong. We disagree. Simply alleging a violation of a constitutional right does not result in the automatic piercing of a sacrosanct privilege. If that were so, then the attorney-client privilege would have been relegated "to the status of a pedestrian discovery dispute." Dontzin v. Myer, 301 N.J. Super. 501, 508 (App. Div. 1997). Without more, plaintiff has not demonstrated the "need" prong.

In addition, plaintiff has not demonstrated he could not obtain the information from a less intrusive source. In its oral decision, the court found plaintiff satisfied the third <u>Kozlov</u> element because "defendants have refused to respond to questions about the memorandum during their deposition testimony."

But plaintiff could obtain the same information through Jerkins and other witnesses. Indeed, during oral argument, plaintiff's counsel conceded Jerkins admitted during his deposition that he recommended against the rehiring of plaintiff because of the September 2016 letter. Without discussing confidential privileged conversations, plaintiff could question Jerkins and other City officials or representatives about their reaction to plaintiff's September 2016 letter and the circumstances surrounding plaintiff's employment.

Plaintiff has not established the narrow, compelling, "grave" circumstances necessary to justify a piercing of the attorney-client privilege. <u>In re Nackson</u>, 114 N.J. 527, 532 (1989). He has not demonstrated any "constitutional right[] or overriding public policy or societal concern[] to which the attorney-client privilege should yield." <u>Hedden</u>, 434 N.J. Super. at 17.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3234-19T4