**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3050-20

CREATIVE MANAGEMENT,
INC., t/a GILL ENERGY,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

7514 TONNELLE AVENUE,
LLC, d/b/a RYDERS STOP,
and WAJDI ZEIN EL DEAN,
a/k/a ZEINEL DEAN,

    Defendants-Respondents/
    Cross-Appellants.

_____

Submitted November 14, 2023 – Decided December 6, 2023

Before Judges Mayer, Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0478-18.

Kathleen R. Wall, attorney for appellant/cross-respondent.

Steven D. Janel, attorney for respondents/cross-appellants.

PER CURIAM

Plaintiff-appellant/cross-respondent Creative Management Inc., t/a Gill Energy (CMI) appeals from a June 4, 2021 judgment entered in favor of defendants-respondents/cross-appellants 7514 Tonnelle Avenue LLC, d/b/a Ryders Stop and Wajdi Zein El Dean a/k/a Zeinel Dean (collectively defendants). Plaintiff also challenges another June 4, 2021 order, denying its application for a judgment notwithstanding the verdict (JNOV) as to defendants' counterclaim and dismissal of the counterclaim, or alternatively, a new trial.

Defendants cross-appeal from the trial court's dismissal of their claim under the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -227. They also appeal from the June 4, 2021 denial of their requests for pre-judgment interest and counsel fees and the award of pre-judgment interest and counsel fees to CMI under the same order. We affirm the challenged orders, as well as the dismissal of defendants' CFA claim.

I.

Plaintiff sells and delivers fuel to service stations. On October 14, 2014, the parties entered into a credit agreement whereby plaintiff agreed to sell and deliver fuel to defendants at their North Bergen gas station. Plaintiff subsequently sold defendants a point-of-sale (POS) software system. The

parties operated under this agreement until November 2017, when Dean told plaintiff he sold the gas station and no longer needed plaintiff's services.

Plaintiff sued defendants in February 2018, alleging defendants owed it $31,125.40. Defendants filed an answer and counterclaim, denying they owed plaintiff any money, and alleging they overpaid it for fuel deliveries because plaintiff "regularly and continually charged [d]efendants . . . for more gallons of fuel than were delivered."

In April 2021, approximately two weeks before the parties' remote jury trial began, Judge Joseph W. Oxley heard argument on plaintiff's motion to bar defendants from admitting summaries of alleged delivery discrepancies at trial. Plaintiff argued the summaries should be excluded because defendants failed to produce the original documents on which they were based. The judge orally denied the motion, noting "defense counsel went through each document used in creating the summaries," and "[s]ubsequently, plaintiff's counsel indicated that she was in possession of each document listed by defense counsel." The judge also found admitting the summaries would "serve to help clarify the issues for the p[ro]spective jurors." However, he ordered "the underlying documents that gave rise to those summaries need[ed] to be part of [defense] counsel's case

3

prior to the submission of the summaries."[1]

Trial commenced on April 19, 2021. Plaintiff's president, Kashmir Gill, testified for plaintiff; Dean testified for defendants. During the proceeding, defendants withdrew their claims against plaintiff for fraud and conversion, proceeding solely on their breach of contract claim. Further, over defendants' objection and on plaintiff's application, Judge Oxley dismissed defendants' CFA claim. He found the CFA claim was not viable because the parties' matter involved "a dispute between two businesspeople," and specifically, a "dispute . . . of what was delivered" to defendants and "what [wa]s owed for those deliveries."

On April 21, 2021, the jury returned its verdict, awarding plaintiff $18,244.05 for monies defendants owed plaintiff for gasoline it sold to them. The jury also awarded defendants $111,318.89 on their counterclaim for breach of contract, based on plaintiff overcharging defendants for fuel deliveries.

Nine days after the jury rendered its verdict, plaintiff moved for JNOV as to the counterclaim and dismissal of the counterclaim; and alternatively, it requested a new trial.

---

[1] On June 29, 2021, the judge entered a conforming order, denying plaintiff's motion in limine.

A-3050-20

In May 2021, the parties moved for judgments on their respective jury awards and requested pre-judgment interest and counsel fees based on their awards. On June 2, Judge Oxley issued an oral decision on the parties' cross-applications. Two days later, he executed two orders memorializing his decision. Under the first June 4, 2021 order, Judge Oxley entered a judgment for plaintiff in the sum of $18,244.05, and a judgment for defendants in the sum of $111,318.89, consistent with the jury's verdict. He also denied defendants' motion for pre-judgment interest and counsel fees, but granted plaintiff's cross-motion for the same relief, awarding plaintiff $11,678.19 in pre-judgment interest and $7,480.56 in counsel fees. Under the second June 4, 2021 order, Judge Oxley denied plaintiff's motion to enter a JNOV and dismiss the counterclaim or alternatively, for a new trial.

When rendering his oral decision on June 2, the judge first addressed plaintiff's JNOV motion and application for a new trial. In denying these requests, the judge found the parties' respective witnesses "were subjected to cross-examination." Additionally, he concluded

> [i]t was quite evident through the course of the trial [that] questions of fact existed. As a result, the evidence and testimony were not plain and so complete that disbelief[] of the story could not reasonably arise in the rational process of an ordinary[,] intelligent mind . . . .

5

Therefore, this court denies plaintiff's motion for [JNOV].  Furthermore, the court finds that it is not clear and convincing that there was a miscarriage of justice under the law.  Accordingly, a new trial is not warranted.  See Rule 4:49-1A.

Next, the judge rejected plaintiff's argument that "because the jury verdict [sheet] only included a question as to compensation for fuel and not for the [POS] software [that plaintiff claimed it provided to defendants]," a new trial was warranted.  The judge reasoned that:

> plaintiff's counsel never objected to the verdict form. Rather, both plaintiff['s] counsel and defense counsel reviewed and approved the verdict form prior to its submission to the jury.  Th[u]s[,] counsel is now barred from asserting that . . . there was an error on the verdict form.  Accordingly, plaintiff's motion to dismiss defendant[s'] breach of contract claim is denied.

Additionally, the judge disagreed with plaintiff that defendants' counterclaim should be dismissed because defendants never admitted their monitoring records into evidence.  He stated that:

> in both this record and in the discovery leading up to trial, it[ was] made crystal clear that defendants were not in possession of the monitoring records. . . . [D]efendants could only provide information they possess . . . .  Additionally, plaintiff was not prohibited from obtaining the monitoring records on their own or from introducing them into evidence.  As such, plaintiff's motion to dismiss defendant[s'] breach of contract claim is denied.

A-3050-20

Moreover, the judge found plaintiff's claim that defendants' summaries were inaccurate and that he erred in admitting them was "meritless." He explained that he rejected "this exact argument" on April 13, 2021, when he orally denied plaintiff's motion in limine to bar defendant's summaries. The judge also stated, "plaintiff had every opportunity during trial to cross-examine [defendants'] witness as to the accuracy of th[o]se summaries."

Additionally, in his June 2 oral decision, the judge characterized plaintiff's contention that its "claims were not properly considered by the jury" as "meritless." He also rejected plaintiff's argument that "the jurors were rushed or pressured in[to] returning a verdict." Further, the judge found "no evidence to support [plaintiff's] claim" that "jurors lost interest in the case." He also reminded the parties that "out of an abundance of caution," he dismissed one juror who later disclosed he "suffer[ed] from an eye infection" after the judge observed that juror closing his eyes "during portions of [a] witness's testimony." Likewise, he found no reason to set aside the jury's verdict, despite plaintiff's argument that "technical issues" during the remote trial prevented one of the jurors from being able to deliberate. The judge concluded this argument was "without merit."

Next, in addressing the parties' respective motions for pre-judgment

interest and counsel fees, the judge first stated "Rule 4:42-11 governs the issues and calculations for pre-judgment interest." Further, he noted that "in paragraph three of the application for credit entered into between the" parties, the agreement provided: "Buyer agrees to pay an interest charge of . . . [eighteen percent annually,] . . . on any amount which is past due more than [thirty] days from the . . . due date." Additionally, the judge observed that "[t]he terms of the application for credit do not provide for interest in the event of overpayment for fuel . . . . As such, the court will award [pre-judgment] interest to the plaintiff only."

Next, as to the issue of counsel fees, the judge stated that based on "the American rule," "attorneys' fees are not ordinarily to be [awarded] in the absence of a statute or enforceable contract providing therefor[e]." Moreover, he found,

> paragraph [thirteen] of the application for credit entered into by the [parties] states in relevant part, 'If it is necessary for the seller to institute legal proceedings against the buyer to collect an indebtedness due to or enforcing any of the terms o[r] conditions of the sale, seller should be entitled to recover its reasonable attorneys' fees.' . . . Pursuant to the terms of the contract, plaintiff is entitled to attorneys' fees. Nothing in the contractual agreement entitles defendant[s] to attorneys' fees.
>
> Plaintiff certified the attorneys' fees were $300 per hour for a total of $42,690. Additionally, plaintiff certified that . . . costs expended in this matter were

8

$918.74.  However, during oral argument, . . . plaintiff agreed to reduce the . . . request . . . for attorneys' fees and costs [to] $7,480.56.  The court finds that this is fair and reasonable under all of the circumstances, and . . . will award attorneys' fees and costs to plaintiff in the amount of $7,480.56.

For the reasons . . . set forth[,] . . . defendant[s' counsel fee] application is denied . . . .

## II.

On appeal, plaintiff argues the judge erred by:  (1) denying plaintiff's motion for a JNOV and dismissal of the counterclaim, despite "defendants' failure to meet their burden of proof to prevail on the counterclaim under the Uniform Commercial Code" (UCC), N.J.S.A. 12A:1-101 to 10-106; (2) failing to include a question on the jury's questionnaire sheet about plaintiff's claim for compensation for POS software it sold to defendants; (3) admitting defendants' inaccurate summaries at trial and "refusing to conduct a Rule 104 hearing"; and (4) denying plaintiff's motion for a new trial, despite the jurors' inability to consider the parties' claims.

In their cross-appeal, defendants argue the judge erred in:  (1) dismissing their CFA claim; (2) denying their request for pre-judgment interest and counsel fees on their counterclaim; and (3) granting plaintiff's requests for pre-judgment interest and counsel fees.

A-3050-20

The parties' arguments are unavailing.

We begin with the well-established principles that guide our analysis. As a threshold matter, we will not consider an argument which was not raised before the trial court. Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Appellate review is not limitless. "The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves." State v. Robinson, 200 N.J. 1, 19 (2009); see also Zaman v. Felton, 219 N.J. 199, 226-27 (2014). Moreover, we review arguments raised for the first time on appeal under a plain error standard, meaning we disregard such errors unless they were "clearly capable of producing an unjust result." R. 2:10-2; State v. Daniels, 182 N.J. 80, 95 (2004).

It is well settled that "[a]fter the jury has reached a verdict, we review a decision on a JNOV motion pursuant to Rule 4:40-2 under the same standard applied by the trial court." Conforti v. Cnty. of Ocean, 255 N.J. 142, 162 (2023) (citing Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016)). Our review of a trial judge's determination on a motion for JNOV, pursuant to Rule 4:40-2(b), is "quite a mechanical one." Sons of Thunder v. Borden, Inc., 148 N.J. 396, 415 (1997) (quoting Dolson v. Anastasia, 55 N.J. 2, 5 (1969)).

10

> [T]he test is . . . whether "the evidence, together with the legitimate inferences therefrom, could sustain a judgment in . . . favor" of the party opposing the motion, i.e., if, accepting as true all the evidence which supports the position of the party defending against the motion and according [the non-movant] the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied.
>
> [Ibid. (omissions and first alteration in original) (quoting Dolson, 55 N.J. at 5).]

"We, like the trial court, are not concerned with 'the worth, nature[,] or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion.'" Koseoglu v. Wry, 431 N.J. Super. 140, 155 (App. Div. 2013) (quoting Sons of Thunder, 148 N.J. at 415). Accordingly, "a motion for JNOV may 'only be granted where no rational juror could conclude that the plaintiff marshaled sufficient evidence to satisfy each prima facie element of a cause of action.'" Conforti, 255 N.J. at 163 (quoting Smith, 225 N.J. at 397).

We also recognize that "[j]ury verdicts should be set aside in favor of a new trial sparingly and only in cases of clear injustice." Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 4:49-1 (2023). The decision whether to grant a motion for a new trial is left to the sound discretion of the trial judge

and will be reversed only for an abuse of discretion. Baumann v. Marinaro, 95 N.J. 380, 389 (1984).

"The standard of review on appeal from decisions on motions for a new trial is the same as that governing the trial judge—whether there was a miscarriage of justice under the law." Hayes v. Delamotte, 231 N.J. 373, 386 (2018) (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011)); see also Twp. of Manalapan v. Gentile, 242 N.J. 295, 304 (2020); R. 4:49-1(a). "[A] 'miscarriage of justice' can arise when there is a 'manifest lack of inherently credible evidence to support the finding,' when there has been an 'obvious overlooking or under-valuation of crucial evidence,' or when the case culminates in 'a clearly unjust result.'" Hayes, 231 N.J. at 386 (quoting Risko, 206 N.J. at 521-22).

In evaluating a trial court's decision to grant or deny a new trial, we "must give 'due deference' to the trial court's 'feel of the case'"; however, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Id. at 386-87 (first quoting Risko, 206 N.J. at 522) (second quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)) (alteration in original).

Next, we recognize that "[t]he standard a trial court must apply when considering a Rule 4:6-2(e) motion to dismiss a complaint [or counterclaim] for failure to state a claim upon which relief can be granted is 'whether a cause of action is "suggested" by the facts.'" Teamsters Loc. 97 v. State, 434 N.J. Super. 393, 412 (App. Div. 2014) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). A motion to dismiss under Rule 4:6-2 is limited to "the pleadings themselves." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019) (quoting Roa v. Roa, 200 N.J. 555, 562 (2010)).

"[A] dismissal with prejudice is 'mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted,' or if 'discovery will not give rise to such a claim.'" Mac Prop. Grp. L.L.C. & The Cake Boutique L.L.C. v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022), certif. denied, 252 N.J. 258 and 252 N.J. 261 (2022) (first quoting Rieder v. State, 221 N.J. Super. 547, 552 (App. Div. 1987)) (then quoting Dimitrakopoulos, 237 N.J. at 107). We review a trial court's decision to dismiss de novo. Baskin v. P.C. Richard & Son, L.L.C., 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos, 237 N.J. at 108).

As to plaintiff's contention the judge erred by failing to include a question about its claim for its POS software in the jury's questionnaire sheet, we note that "hindsight cannot be a basis for concluding that the [jury questionnaire] was inadequate" where, as here, "there was no objection to the form of the questions asked, or any request for additional questions to be placed on the form." Kluczyk v. Tropicana Prods., Inc., 368 N.J. Super. 479, 486 (App. Div. 2004); see also Hutchinson ex rel. v. Atl. City Med. Ctr.-Mainland, 314 N.J. Super. 468, 486 (App. Div. 1998) (providing that no objection to a verdict sheet barred a challenge on appeal).

Further, regarding the dismissal of defendants' CFA claim, we observe that "[t]he CFA was intended 'to greatly expand protections for New Jersey consumers.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 120 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 555 (2009)). To establish a cause of action under the CFA, a consumer must demonstrate the alleged violator engaged in a practice of unlawful conduct; the consumer suffered an ascertainable loss; and there is "a causal relationship between the unlawful conduct and the ascertainable loss." Id. at 121 (quoting Bosland, 197 N.J. at 557). "Our courts have been careful to constrain the CFA to 'fraudulent, deceptive or other similar kind of selling or advertising practices.'" D'Agostino

14

v. Maldonado, 216 N.J. 168, 189 (2013) (quoting Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271 (1978)); see also N.J.S.A. 56:8-19.

The CFA "protects corporate as well as private consumers." Marascio v. Campanella, 298 N.J. Super. 491, 499 (App. Div. 1997). But a business entity is not entitled to protection under the CFA if it does not "consume" the goods purchased. See City Check Cashing, Inc. v. Nat'l Bank, 244 N.J. Super. 304, 309 (App. Div. 1990). "[T]o be a consumer respecting the transaction in question, the business entity must be 'one who uses (economic) goods, and so diminishes or destroys their utilities.'" Ibid. (quoting Hundred E. Credit Corp. v. Eric Schuster, 212 N.J. Super. 350, 355 (App. Div. 1986)); see also Stockroom, Inc. v. Dydacomp Dev. Corp., 941 F. Supp. 2d 537, 544 (D.N.J. 2013) (holding that in cases "involv[ing] wholesalers and distributors[,] . . . . the distributor cannot sue the wholesaler under the NJCFA because the distributor is not a 'consumer' as that word is commonly understood").

Turning to the issue of counsel fees, we acknowledge that "[i]n general, New Jersey disfavors the shifting of attorneys' fees." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 404 (2009) (citation omitted). However, "a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440

15

(2001); see also R. 4:42-9 ("No fee for legal services shall be allowed" except for the eight actions expressly stated in the Rule); and Brunt v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 357, 363 (App. Div. 2018). "[A] reviewing court will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Litton, 200 N.J. at 386 (quoting Packard-Bamberger, 167 N.J. at 444).

Likewise, we recognize an "award of pre[-]judgment interest in a contract case is within the sound discretion of the trial court." Id. at 390.

> [T]he primary consideration in awarding pre-judgment is that "[the party ordered to pay counsel fees] has had the use, and the [party awarded counsel fees] has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the pre[-]judgment period during which the . . . [party awarded fees] is found to have been earlier entitled."
>
> [Ibid. (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 506 (1974)).]

We also review a trial court's evidentiary ruling "under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." State v. Prall, 231 N.J. 567, 580 (2018) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). "Under that deferential standard, we review a trial court's evidentiary ruling only for a 'clear error in judgment.'" State v.

16

Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)).  But if a party does not object to the admission of evidence during a trial—as happened here, when defendants introduced their summaries and plaintiff's counsel subsequently cross-examined defendants' witness about them—we review the admission of that evidence for plain error.  R. 2:10-2.  Nonetheless, we review an evidentiary ruling de novo if the trial court applies the wrong legal standard in deciding to admit or exclude evidence.  State v. Trinidad, 241 N.J. 425, 448 (2020).

That said, we are mindful that pursuant to N.J.R.E. 1006, a proponent of evidence "may use a summary, chart, or calculation presented by a qualified witness to prove the content of voluminous writings . . . that cannot conveniently be examined in court."  "This exception to the best evidence rule is a concession to practicality and the rigors of time."  Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. on N.J.R.E. 1006 (2022-2023).

Finally, it is well settled that we review the interpretation of a contract de novo.  Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011) (citing Jennings v. Pinto, 5 N.J. 562, 569-70 (1950)).  A court should enforce a contract "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract."  Cypress Point

Condo. Ass'n, Inc. v. Adria Towers, L.L.C., 226 N.J. 403, 415 (2016) (quoting Manahawkin Convalescent, 217 N.J. at 118). But when "the language of a contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect." Ibid. (quoting Manahawkin Convalescent, 217 N.J. at 118).

Guided by these principles, and following our review of the record, we discern no basis to disturb the challenged orders. Accordingly, we affirm the June 4, 2021 orders substantially for the reasons outlined by Judge Oxley in his well-reasoned oral opinions. We add the following comments.

Plaintiff contends Judge Oxley erred by failing to grant its motion for JNOV based on the UCC. We disagree.

As our Supreme Court has recognized, "the UCC preserves the perfect tender rule to the extent of permitting a buyer to reject [a] good[] for a[] nonconformity." Ramirez v. Autosport, 88 N.J. 277, 290 (1982). To reject goods, the purchaser must notify the seller "within a reasonable time after their delivery." N.J.S.A. 12A:2-602(1). Under N.J.S.A. 12A:2-508(1), "[w]here any tender or delivery by the seller is rejected because non-conforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of [its] intention to cure and may then within the contract time make a

conforming delivery." The terms of N.J.S.A. 12A:2-508(1) demonstrate its inapplicability here. In the present case, the fuel itself was conforming. But as the jury found, it was the amount of fuel that plaintiff represented it delivered that was inaccurate.

Plaintiff's UCC argument also must fail because when it filed its answer and separate defenses to defendants' counterclaim, it did not assert as a defense that defendants failed to conform to the UCC. It also did not ask the judge to charge the jury regarding the UCC. Moreover, plaintiff cites to no part of the trial record to show it submitted proofs to the jury pertaining to "defects" in the fuel it delivered to defendants. Thus, plaintiff was not entitled to a JNOV based on the provisions of the UCC it references on appeal.

Similarly, we reject defendants' argument as to its CFA claim. Here, the record reflects defendants bought fuel wholesale from plaintiff on a weekly basis and then sold the fuel to their customers at retail. Under these circumstances, we agree with Judge Oxley that defendants were not consumers as contemplated under the CFA.

To the extent we have not addressed any of the parties' remaining arguments, they lack merit and therefore, need not be discussed in this written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3050-20